```
 1            IN THE UNITED STATES DISTRICT COURT

 2            IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4
      TELES AG                    :   CIVIL ACTION
 5    INFORMATIONSTECHNOLOGIEN,   :
                                  :
 6         Plaintiff/             :
           Counterclaim-Defendant :
 7                                :
                v.                :   NO. 09-072 (SLR)
 8                                :
      CISCO SYSTEMS, INC.,        :   CIVIL ACTION
 9                                :
           Defendant/            :
10         Counterclaim-Plaintiff :   CIVIL ACTION
      --------------------------  :
11    CISCO SYSTEMS, INC.,        :
                                  :
12              Plaintiff         :
                                  :
13              v.                :
                                  :
14    TELES AG                    :
      INFORMATIONSTECHNOLOGIEN,   :   NO. 09-232 SLR/LPS
15
                Defendant
16

17                        - - -

18                          Wilmington, Delaware
                            Thursday, November 12, 2009
19                          3:00 o'clock, p.m.
                            ***Telephone conference
20

21                        - - -

22    BEFORE:  HONORABLE LEONARD P. STARK, U.S. MAGISTRATE JUDGE

23                        - - -

24                              Valerie J. Gunning
                                Official Court Reporter
25
```

```
 1    APPEARANCES:

 2              ASHBY & GEDDES
              BY:  TIFFANY GEYER LYDON, ESQ.
 3
                        -and-
 4
              HOWREY LLP
 5            BY:   MONICA B. LATEEF, ESQ. and
                    DAVID W. LONG, ESQ.
 6                  (Washington, D.C.)

 7
                    Counsel for Teles AG
 8                  Informationstechnolgoien

 9


10
              MORRIS, NICHOLS, ARSHT & TUNNELL
11            BY:  JACK B. BLUMENFELD, ESQ.

12                      -and-

13
              GOODWIN PROCTER LLP
14            BY:  LANA S. SHIFERMAN, ESQ. and
                    ROBERT FREDERICKSON, III, ESQ.
15                  (Boston, Massachusetts)

16
                    Counsel for Quintum Technologies, LLC
17                  and Cisco Systems, Inc.

18                      - - -

19

20

21

22

23

24

25
```

1

2                        P R O C E E D I N G S

3

4              (REPORTER'S NOTE:  The following telephone

5    conference was held in chambers, beginning at 3:00 p.m.)

6

7              THE COURT:  Good afternoon, everyone.  This is

8    Judge Stark.  Let me know who is there, please.

9              MR. BLUMENFELD:  Good afternoon, your Honor.

10   This is Jack Blumenfeld for Cisco, along with Lana Shiferman

11   and Robert Frederickson.

12             THE COURT:  Okay.

13             MS. LYDON:  Good afternoon, your Honor.  On

14   behalf of Teles, Tiffany Lydon, from Ashby & Geddes.  On the

15   line with me are David Long and Monica Lateef, from the

16   Howrey firm.

17             THE COURT:  All right.  And for the record, this

18   is our two cases of Teles versus Cisco, which is Civil

19   Action No. 09-72-SLR, as well as Cisco versus Teles, which

20   is 09-232-SLR-LPS.

21             The purpose of today's call is to discuss

22   several discovery disputes that have arisen between the

23   parties.  I have, of course, reviewed the letters.  We've

24   got a total of four letters from the parties in preparation

25   for today's call and I want to go through these in order.

1    And let's begin, first, with Teles' letter and Teles'

2    complaint regarding Cisco's invalidity contentions and

3    the adequacy of what Cisco has provided to Teles at this

4    point.

5              So since Teles is the moving party on that one,

6    let's me hear first from Teles, please.

7              MS. LATEEF:  Yes, your Honor.  This is Monica

8    Lateef, from Howrey, speaking.

9              Our position, as I stated in the papers, is that

10   Cisco's invalidity contentions are inadequate and also not

11   narrowly focused, as directed by Judge Robinson at the last

12   hearing that we had.

13             They provided us with 34 claim charts.  Prior to

14   speaking with Judge Robinson, we brought up at the time that

15   they had 37, and we spoke about the fact that they would be

16   narrowing them to the contentions that had claim charts

17   added to them.  They were permitted to provide further claim

18   charts because new claims were entered into the case, and it

19   looks like they added 15 new claim charts that weren't even

20   limited to the new claims that were added in the case, even

21   though they represented to the Court that that is what they

22   would be.

23             So total we're still looking at 34.  So we went

24   from 37 to 34.  And then just to get to the substance of the

25   charts, it's not clear, based on what they provided,

1    basically, what references are anticipated by, and to the

2    extent they're obvious, what combination of references are

3    obvious.  They will cite in their response to our

4    Interrogatory No. 2 that any of the charts can be combined,

5    but they never tell us how they can be combined.  They never

6    tell us if they can be combined.

7            So it sort of leaves us in a predicament in not

8    really understanding what their invalidity contentions are.

9            THE COURT:  Let me ask you a couple questions,

10   Ms. Lateef.

11           MS. LATEEF:  Sure.

12           THE COURT:  First, it sounds like you're

13   suggesting that Judge Robinson made a ruling that's relevant

14   to today's dispute and that you think Cisco is under an

15   obligation, or that I should be measuring these responses to

16   your interrogatories, I should be measuring them against

17   something Judge Robinson said, but you have not provided me

18   or clued me in to what you think Judge Robinson said that's

19   relevant to this.

20           Am I misunderstanding you?

21           MS. LATEEF:  I am pointing to something Judge

22   Robinson said and maybe I just wasn't clear what we

23   understand her to have said.

24           During that hearing, our complaint was that they

25   hadn't focused or narrowed their -- their prior art

1    references, and they had a total of 54 references and then

2    they had 19 charts on those references.

3              And our understanding was that Judge Robinson

4    said that the 54 was too much, and they needed to narrow

5    their prior art references.  She was okay with the 19,

6    because they provided charts on those, and then Ms.

7    Shiferman represented that they would be adding more prior

8    art references with charts going to the new claims that had

9    been added to the case, and so Judge Robinson said that that

10   was appropriate.

11             My point here is that those new charts now total

12   15, and they're not even limited to the new claims that were

13   introduced into the case.  So when you add the 19 and the

14   15, we're now looking at 34.

15             THE COURT:  Is there any reference in your

16   letter to what Judge Robinson ruled?  I don't see anything

17   about that.

18             MS. LATEEF:  Your Honor, I don't think we did

19   put that in our letter.

20             THE COURT:  All right.  Then answer another

21   question.  Cisco's response, at least in their letter, is

22   that you know everything that you're trying to get because

23   there is the extensive re-exam history and they've provided

24   overwhelming detail to you in that context.

25             What's your response to that?

1          MS. LATEEF:  Our -- your Honor, our response to

2    that, if Cisco wants to limit themselves to the prior art

3    they cited in the re-exam, we are happy with that.  The

4    prior art they cited in the re-exam is a handful of prior

5    art.  It is not close to the 34 that they've cited in

6    response to our interrogatories.  So if your Honor's ruling

7    is they're limited to that prior art, we accept that

8    wholeheartedly and are fine with that.

9          And the difference is, our problem is, it's not

10   the same.  What they said in their interrogatory and what

11   they said in their re-exam are not the same amount of

12   references.

13         THE COURT:  All right.  And what about their

14   argument that the relief you are seeking now from the Court

15   is something broader than what you even asked for in your

16   Interrogatory No. 2?

17         MS. LATEEF:  Well, we think that the relief

18   we're seeking from the Court is inherent in an obviousness

19   analysis.  We're simply going through what's required to

20   prove obviousness and asking that they prove those elements

21   of obviousness.  We're not sure how else obviousness would

22   be explained without providing that information.

23         THE COURT:  Okay.  I might have some more

24   questions for you on that, but let me turn to Cisco now, to

25   respond and tell me whatever else you want me to know.

1          MS. SHIFERMAN:  Thank you your Honor.  This is

2    Lana Shiferman.  I will address this point.

3          First, addressing the point that Ms.

4    Lateef called focused, the first issue is that this letter

5    is not -- this issue is not properly before the Court today.

6          My understanding was that we are -- that the

7    issue in dispute was the substance of the response on the

8    references contained in response to Interrogatory No. 2, as

9    detailed in their letter.  They have not met and conferred

10   since the September 29th hearing, and that issue was not

11   ripe for discussion today.  I am prepared, however, and will

12   address it on the substance, to the extent I can, without

13   having that material in front of me.

14         During the hearing on September 29th, Teles,

15   for the first time, argued to the Court that they were

16   unable to respond to Cisco's interrogatory regarding why

17   their patents were not invalid based on the references that

18   we cited in our Interrogatory Response No. 2, and their

19   primary complaint was that there were simply too many

20   references, and we had not provided charts for some of

21   them.

22         They then attempted to have the Court preclude

23   or force us to limit those references.  The Court did not at

24   any point state that we were at this time in the middle of

25   discovery, limit or precluded from -- to a particular number

1    of references.  She did say 64 generally was too much for a

2    trial, and that we would never go to trial on those.  And we

3    fully agree with that.

4            Right now, in this case, Teles has asserted

5    almost 40 different claims.  Discovery is ongoing on all of

6    those claims and we have simply provided the key references

7    that we believe address those claims.  Both parties will be

8    required, as the case progresses, to limit that.

9            Teles will very likely not be going to court or

10   in front of a jury on 40 different claims.  Once Teles

11   limits its claims to the numbers that would be in front of

12   the jury, we will then be able to, through that process,

13   limit the references that we will be relying on.

14           At this point in the case, it's simply too

15   premature to force us to limit references.  Discovery is

16   ongoing and we are finding additional information as

17   we discovered and providing it to Teles in detailed form.

18           The Court did state specifically that to the

19   extent that we take the time to chart the references, which

20   we have done for all key references, which we consider our

21   primary references for this case, then Teles should address

22   and respond to those references, which Teles, in response to

23   their interrogatories, their own counteracting

24   interrogatories, have not done at this point in sufficient

25   detail.

1            There's nothing in the September 29th hearing

2     transcript limiting us to any particular number of

3     references at this point.  What we have done is identified

4     the primary references that we believe are -- anticipate or

5     obviate the asserted claims and provide provided detailed

6     contentions on those references in the form of charts.

7            With respect to the acceptance of the response,

8     if you look at Teles' own Exhibit 1, you will see that we

9     have provided a detailed 40-some page response explaining

10    our invalidity contentions.  That explains the fact that

11    there is a German invalidity proceeding where there has been

12    detailed briefing on certain references.  This provides

13    Teles with significant information regarding those

14    particular references, but also gives them an understanding

15    of the motivation to combine particular references and the

16    general motivation to combine references in this area.

17            As the PTO has already stated, that one of the

18    press releases provided by Cisco generally provides a motive

19    to combine, which we are relying on in this case.

20            We have then provided detailed charts going

21    claim by claim, to the extent they applied a particular

22    claim for a number, 30-some references, and we've provided

23    for you examples of those charts as exhibits to our

24    submission in response to Teles' invalidity submission.

25    We've given you three such charts to show you the detail

1    that we've gone to.

2            We have then, for purposes of obviousness, told

3    Teles which of those charts should be combined, to the

4    extent we believe that they, together, more than one

5    reference, make the asserted claims obvious.

6            This is well within the realm of what this

7    interrogatory seeks.  This is not a broad interrogatory that

8    generally talks about all the evidence necessary for

9    obviousness.  That comes in many different forms, and will

10   continue to come through depositions, through expert

11   discovery and the like.

12           What their interrogatory sought is what we

13   provided.  There's nothing in their interrogatory that

14   states, tell us what the level of ordinary skill in the art

15   was.  Those are different interrogatories which we have

16   not met and conferred on.  There have been no issues in

17   dispute on those interrogatories.

18           To the extent they believe they're entitled to

19   that information, then they should refer to the

20   interrogatories covering that subject matter, and if they

21   are not satisfied with that response, then we should have a

22   proper meet-and-confer to address them.  But this

23   interrogatory specifically sought claim charts and

24   information regarding the prior art references that Cisco

25   believed either anticipate or make obvious the asserted

1   claims.

2           THE COURT:  At what point in the case will it be

3   appropriate, Ms. Shiferman, for you to narrow the references

4   that you are referring to and sort of lay it all out on the

5   table exactly which reference, you know, invalidates, in

6   your view, which claim?

7           MS. SHIFERMAN:  Well, we certainly believe

8   that we actually have provided the information which shows

9   that -- which references anticipate and which references in

10  combination make obvious the asserted claim.  To the extent

11  we would need to narrow that down to the actual references

12  that would go to trial, I think that that would be done

13  closer to trial.

14          We still have -- the next stage of the case will

15  be expert discovery.  Cisco will be providing an expert

16  report on the references that I believe invalidate the

17  patents and Teles will be responding.  There will be

18  depositions that will put into detail and focus which of the

19  key references, what the experts believe are the relevant

20  references, and then, when Teles actually lets us know which

21  claims are going to be tried in front of a jury, we can

22  then, with that information, notify them which of our

23  references we would be pursuing at trial, but certainly, or

24  at least narrow the references to some point.  But,

25  certainly, during discovery, before depositions have been

1    completed, while additional references are being found while

2    there are still 40 asserted claims in the case with a

3    reservation of right by Teles to add additional claims, that

4    that time has not come.

5            THE COURT:  All right.  Ms. Lateef, anything you

6    want to respond to?

7            MS. LATEEF:  Yes, your Honor.  I apologize if

8    this isn't in the letter, but to the extent you were

9    interested, the transcript for the hearing that we had with

10   Judge Robinson was on Page 26, line 6, and it goes on

11   through Page 29, line7.

12           I just want to add that while Judge Robinson

13   didn't limit them to a number, she certainly said that the

14   amount that they had was too many, and one or two more --

15   you'll see that if you read the transcript -- they focus on

16   another one or two, that would be fine.  And she was talking

17   about one or two more from the 19.

18           So I just wanted to point that out.

19           And as far as whether or not what we're seeking

20   goes beyond the interrogatories, our interrogatory did ask

21   for the basis for claiming invalidity, and we believe the

22   information we're seeking goes to what Cisco's basis is for

23   claiming invalidity.

24           THE COURT:  All right.  I'm prepared to rule on

25   this dispute, the one raised by Teles, and I am going to

1    deny the relief that Teles is seeking.  And the dispute, as

2    I understand it, and as it's before me and as is ripe, is a

3    dispute over substantively the sufficiency of Cisco's

4    response to the invalidity Interrogatory No. 2 of Teles.

5          And given the stage of the case, the middle of

6    discovery, that is the middle of fact discovery, with

7    depositions still ongoing, I believe that what Cisco has

8    provided to Teles is adequate at this point.  Cisco is under

9    an ongoing obligation to supplement, and in this case,

10   supplement may well, it sounds like it will, mean narrow

11   over time, but for now, given the breadth of what has been

12   provided and the detail of what has been provided by Cisco,

13   including what has been provided through the re-examination

14   proceedings, to the extent those have been incorporated by

15   reference and the response to the interrogatory, I find that

16   they are adequate for this point in the case.

17         I am not making any ruling today and do not view

18   as in front of me any suggestion or argument by Teles that

19   independent of the overall substance of what is in the

20   interrogatory responses at this point, that somehow, if I

21   were to measure them against what Judge Robinson expected

22   or ordered in her September 29th conversation with the

23   parties, I'm not ruling on that.

24         There was no reference to that issue in the

25   letter to me.  The September 29th transcript was not put in

1    front of me for purposes of today's call.  I did not review

2    it for purposes of today's call.  And my understanding is

3    the parties have not met and conferred on that issue.  So my

4    ruling today does not reach that issue.

5            Let's move on now to the other matters that

6    are before me today, which are all complaints that Cisco

7    raises about purported deficiencies in Teles' discovery.

8    And so I will hear first from Cisco on that.

9            It seemed that there was overlap on at

10   least some of these issues.  I'm not sure that you need to

11   address -- in fact, I think it's best if you don't address

12   all of them at once, but if you start with the first couple

13   that I think do overlap, and then I want to hear from Teles,

14   and then we'll come back to Cisco.

15           MS. SHIFERMAN:  Yes your Honor.  Lana Shiferman

16   again.

17           I think the two issues that overlap to an extent

18   are the first two that are addressed in our letter, and that

19   is Teles' refusal to produce discovery from its prosecution

20   counsel, and then also the issue with respect to note

21   related to an alleged interview that occurred with the '431

22   Patent Examiner during the prosecution of the patent.

23           First, generally, with respect to the

24   information from the prosecution counsel, we are seeking

25   discovery from Teles' prosecution counsel related to the

1    asserted patent.  This is typical discovery that happened.

2    This discovery is relevant to the scope of the asserted

3    patents.  There's potential information available related to

4    disclaimers.  It goes to what Teles and its counsel

5    understood the patents to cover.  And this is, as we

6    cited, cited by the cases that we provided for in our

7    letter, this is generally information that is available

8    during discovery.

9           One of the categories that we are seeking from

10   the prosecution counsel is information related to

11   inequitable conduct.  That is, however, not the only

12   information that we are seeking from the prosecution

13   counsel.

14          With respect to the general information, I

15   would -- prosecution files, I would refer the Court to the

16   Microsoft case, where the Court found that this type of

17   information was discoverable.

18          Teles' only real response here is that this

19   issue is not ripe before this Court because the subpoenas

20   were issued in (inaudible).  However, this issue really is

21   properly before this Court.

22          This discovery was first sought from Teles

23   itself.  They have refused to provide it.  We then issued

24   the subpoenas.  But here, Teles has possession, custody and

25   control of these documents, and the Novak law firm is asking

1    under the direction of Teles and Teles' counsel in this

2    case.  And, in fact, the Howrey law firm is representing

3    both Teles and the Novak firm that we have subpoenaed.

4            When the inequitable conduct issue was before

5    Judge Robinson and Teles refused to conduct any discovery on

6    that issue until their motion for judgment on the pleadings

7    was decided, which motion was denied by the Court, the Novak

8    firm listened to the instructions of Teles and Teles'

9    counsel and refused to provide any documents until that

10   issue was decided.

11           Then, last week, we were informed that the

12   documents would be coming on this past Friday, November 6th,

13   and presumably, we can only assume, because this issue on

14   the scope of discovery was raised with the Court, we have

15   not received any documents again in cooperation with Teles

16   and its positions in this case.

17           So it's clear that this issue really should be

18   before this Court on the issue of Teles' position on the

19   production of those documents since the objections are

20   really Teles' and not the Novak firm's.

21           In fact, Judge Robinson had addressed a similar

22   issue in the past, and indicated where there is a claim of

23   attorney/client privilege, and our understanding is that

24   some of these documents and some of the objections based on

25   that -- that were filed or served on us relate to the

1    attorney/client privilege, that that issue is before -- is

2    properly before the Court where the case is pending.

3              And we can provide citation to that issue,

4    and that is Accenture Global Services versus Guidewire

5    Software.  The docket number is 07-826.  And that issue is

6    addressed in footnote 1 with respect to the attorney/client

7    production of documents and the issue being before Judge

8    Robinson.

9              THE COURT:  Is this discovery -- did you also

10   seek it directly from Teles?

11             MS. SHIFERMAN:  Yes.  We have sought all

12   documents related to the prosecutions of the patents-in-suit

13   from Teles in our document requests.

14             THE COURT:  Okay.  Provide an example of what

15   you have in mind that would be a nonprivileged communication

16   between prosecution counsel and Teles.

17             MS. SHIFERMAN:  For example, transmittal

18   letters, which show the timing of when certain documents

19   were transmitted to the client.  They would show knowledge

20   related to particular events that might go to inequitable

21   conduct.  Those certainly would not be privileged.

22             Any sort of communications that are technical in

23   nature rather than strategic related to the disclosure would

24   not be privileged.  Those are two examples.

25             THE COURT:  And Teles says in their letter that

1    they -- with respect to the interview with the PTO Examiner

2    and Mr. Gendner, I think it is, Teles said they've now

3    produced all notes made during the interview.

4            Is that satisfactory on that issue?

5            MS. SHIFERMAN:  No, your Honor.  We -- I guess

6    we would want more -- a further representation with respect

7    to the notes during the interview, but our request is

8    actually broader than just notes during their interview.

9            Teles, for the first time in this case, just two

10   months ago, on an issue that has been pending in the case

11   since February, which is the inequitable conduct related to

12   the '431 patent, told us that there's an alleged interview

13   that took place in December 2007 with the Examiner.  They

14   admit that in the prosecution history itself, there was no

15   record of this interview with the Examiner.  Instead, they

16   have voluntarily provided a declaration from Mr. Gendner

17   attaching his notes from that interview and they have relied

18   on that in defense of Teles' allegation, or Cisco's

19   allegation that there was inequitable conduct.

20           By relying on these notes, again, voluntarily

21   putting them into issue in the case, notes that include his

22   impressions of what occurred at the interview, not just

23   facts -- and we have attached a copy of the note -- they

24   have waived by subject matter all communication, notes taken

25   at the interview by anybody, and there were four individuals

1    that I believe that were in that interview.

2              THE COURT:  Let me interrupt you, Ms. Shiferman.

3              First of all, how could there be any privilege

4    attaching to communications between the Examiner and Teles?

5    And if there was no privilege there, then what could they

6    possibly have waived by disclosing a record of that?

7              MS. SHIFERMAN:  We would argue that if there's

8    no privilege, then we should have all notes from that

9    communication, but we still do not understand, because there

10   has been -- there have been representations to us made

11   during other meet-and-confers that there may well be other

12   notes, and that only certain notes were provided to us.  So

13   it's unclear to us exactly what the extent of all the notes

14   are.

15             But Teles' position is that to the extent that

16   there are any mental interpretations within the notes, that

17   those are privileged, and that it is only the factual notes

18   that are not privileged.

19             The notes that they provided for Mr. Gendner

20   include his mental impressions and interpretations of what

21   occurred in that interview.  By providing those voluntarily,

22   they have now waived the subject matter of that interview,

23   and that includes not only the notes taken by all attendees

24   of the interview, but also any notes that concern the

25   interview, either before or after and followup.  All of this

1    is relevant to their defense that the interview took place

2    and they took certain actions or didn't take certain actions

3    in reliance of what occurred at that interview.

4            We believe that this is classic -- the use of

5    this declaration is really a classic example of the sword

6    and shield rule, where they are selectively providing

7    information that is providing them a tactical advantage, as

8    explained by the cases cited in our letter.  On the other

9    hand, potentially holding back information concerning what

10   occurred at that interview and all the followup.

11           And we do not at this point have a clear

12   understanding of whether we even have a privilege log of all

13   the communications related to this.  We did receive at 12:00

14   noon today the beginning of their privilege log.  That seems

15   to have some entries from around this December time period,

16   but their log is not complete.  We know a substantial

17   additional amount of privileged information is still being

18   logged and will be coming in the next several days.

19           So we still do not have an understanding even

20   of, by looking at a privilege log, what else is out there.

21           THE COURT:  And if you did have a complete

22   privilege log of any documents relating to this interview,

23   including a time frame before and after the interview?  And

24   if you are provided with any nonprivileged such documents,

25   what else is it that you are seeking or have sought in

1    discovery from Teles regarding prosecution counsel and why

2    do you need anything more than that?

3             MS. SHIFERMAN:  Well, that interview addresses

4    only one issue in the case, and that is Cisco's inequitable

5    conduct defense based on inequitable conduct that occurred

6    during the prosecution of the '431 patent.

7             The remainder -- there's a second inequitable

8    conduct defense related to the prosecution of the '453

9    patent, that relevant issues there are related to Teles'

10   knowledge and citation to documents from the German

11   invalidity proceedings during the prosecution of the '453

12   patent in the United States.  Information from Teles'

13   prosecution counsel, there might be -- and we don't know.

14   We just don't know whether it exists or not because we don't

15   have a privilege log of those documents, but there may well

16   be documents showing whether or not Teles had knowledge, at

17   what time they had knowledge, who had knowledge.  There

18   might be information regarding why particular documents were

19   submitted or not submitted.

20            Also, in addition to just generally the

21   inequitable conduct issue, the documents related that -- the

22   nonprivileged documents from the prosecuting attorneys and

23   then also a corresponding privilege log of all the withheld

24   documents will address other issues in the case relating to

25   the scope of the patent and potentially invalidity.

1          THE COURT:  All right.  Let me hear from Teles,

2   please, on these two issues.

3          MR. LONG:  Thank you your Honor.  This is David

4   Long with the Howrey law firm, on behalf of Teles.

5          A few things.  First, as a threshold issue, it

6   was our understanding, coming into this hearing, that Cisco

7   was seeking enforcement of the subpoena served on the Novak

8   law firm and the Christie Parker Hale law firm.  The

9   argument by Cisco now that they're seeking to enforce some

10  discovery as to Teles is news to us, and we're not prepared

11  to address that.  They have not cited their interrogatories

12  seeking that.

13         So as a threshold matter, that is something we

14  weren't prepared to address, nor did it appear to be

15  apparent from our meet and confer, and the fact that they

16  served the subpoenas on the Novak firm and their letter to

17  your Honor.

18         Secondly, I guess to catch the low-hanging

19  fruit in a sense, as your Honor hit the nail on the head,

20  when it came to the interview with the Examiner, we have

21  produced all notes that we are aware of from anybody that

22  occurred during the course of that meeting with the

23  Examiner.

24         Ms. Shiferman, Cisco's counsel, argues that the

25  production of Mr. Gendner's notes some way waive privilege,

1    and we agree with your Honor, there was no privilege during

2    that interview to waive.

3           If you read the notes in Mr. Gendner's

4    declaration, it's was carefully tailored to make sure it did

5    nothing more than concern facts that were about the

6    interview and there was no legal opinion or legal impression

7    involved in any of that.  And there is no waiver as far as

8    that goes.  And we just don't have any other notes to

9    provide them, as far as that interview.

10          THE COURT:  And that includes notes relating

11   to the interview that may have been made in anticipation of

12   the interview and looking back after the interview?

13          MR. LONG:  No, your Honor.  I believe there are

14   notes the day before the interview, but how that discloses

15   what was said in the interview, Ms. Shiferman has never

16   articulated to us.  And, plainly, it was -- as I recall, and

17   I don't have it in front of me, there were notes made in a

18   meeting in anticipation of that interview between Teles and

19   its counsel that would be privileged and we believe work

20   product as well.

21          THE COURT:  And are you logging those notes on a

22   privilege log?

23          MR. LONG:  Your Honor, we have not at this

24   point, and one of the reasons is, given this hearing, I

25   think part of this dispute is the scope of the privilege log

1    that would be required.  And here's why I say that.

2              Cisco has served a subpoena on a law firm

3    seeking the communications with its client.  That, by

4    itself, tells you, there may be a lot of privileged

5    communications.

6              They've done this really on the basis of

7    inequitable conduct.  They have alleged inequitable

8    conduct as to a finite number of prior art references.  If

9    there is something in the files of the Novak firm that has

10   nothing to do with the references on which they allege

11   inequitable conduct, in which they allege should not have

12   been withheld, then it's really not responsive to the scope

13   of inequitable conduct that Judge Robinson has permitted in

14   this case.

15             We have cited the Union Carbide decision in

16   our papers.  In that decision, Judge Robinson permitted the

17   parties to proceed on inequitable conduct as it was pled

18   and supplemented by the briefings at the time, but made

19   clear that it -- that she would not permit discovery on

20   anything that had been improperly pled.  And I would say

21   that certainly then applies to anything that has not been

22   pled.

23             So if there are papers in the files of the

24   Novak firm that make no reference to any of the inequitable

25   conduct allegations by Cisco, then it's not really

1    responsive, I believe, or certainly not relevant to this

2    case, and a law firm should not be burdened with putting on

3    a privilege log every single communication that it has had

4    with its client for issues that are not in the case.

5             THE COURT:  What about Ms. Shiferman's

6    suggestion that these materials are also relevant to claim

7    construction, I take it, because maybe they relate to a

8    disclaimer or somehow your client or your patent prosecution

9    attorneys' views as to the scope of the claims?

10            MR. LONG:  Your Honor, I'm not aware

11   of a decision that has found that to be relevant, in all

12   candor.  I have not seen discovery, and broad discovery,

13   on a parties' law firm that prosecuted a patent to be

14   permitted because it would somehow be relevant to claim

15   construction.

16            The relevance to claim construction is

17   the patent itself and its public file history and not some

18   inarticulated statements between a client and its counsel.

19   To the extent there were any such statements, it would be

20   privileged attorney/client communication.

21            Ms. Shiferman has argued as to two things that

22   she said might be nonprivileged.  One, she said knowledge of

23   events for inequitable conduct.  I take that to mean

24   documents that refer to prior art that they say was withheld

25   or not.

1          Secondly, she says documents that are technical

2    in nature.  And when you look at some of the cases we've

3    cited, Courts have agreed that if the communication with a

4    client or the work of the prosecuting counsel is to

5    distinguish prior art based on an office action or other

6    things, that involves work product.

7          Keep in mind in this case, the very first patent

8    asserted was the '453 patent, in which Cisco sought a

9    declaratory judgment within a week of that issuing.

10         So anything said about the '453 patent, in fact,

11   Cisco's basis for declaratory judgment action, was that it

12   feared it would be sued under the '453 patent.  It would be

13   done in pursuit of litigation.

14         When you look at the other two patents in this

15   case, they were added during the course of litigation, and

16   Cisco has argued even that the patents were sought for the

17   purposes of asserting them against Cisco.  And so that is

18   classic work product.  And when you look at the cases we

19   have cited, and there are others, they support that in this

20   particular instance.  Not only is there attorney/client

21   communication privilege, but there is an attorney work

22   product privilege that attaches.

23         So in sum, these other bases that Ms.

24   Shiferman alleges is news to me.  I've never seen a Court

25   rely on it for purposes of claim construction, and, in any

1    event, it would be privileged, and we think it would be

2    unduly burdensome if it's not -- if there's not a document

3    that concerns the specific prior art that they allege has

4    been withheld, for the Novak firm to have to created a

5    privilege log for discovery seeking communication with a

6    client and working documents and prosecution.

7              Now, another issue, too, is these

8    re-examinations that are going forward with two of the

9    patents.  Cisco itself has called them litigation.

10             The '902 patent is what is called an enter

11   partes re-examination in which Cisco itself gets to

12   participate in, and it is a classic litigation.  So to have

13   us put on a privilege log documents that were done in the

14   course of that re-examination would be very invasive, and

15   not only that, at the end of the day, not really provide

16   anything that is relevant or of substantial relevance to the

17   case.

18             THE COURT:  Are you in the process of

19   completing a privilege log of some extent?  It sounded

20   like you provided something and are intending to provide

21   more?

22             MR. LONG:  From the Teles document

23   production, we have provided a privilege log of all

24   documents to date.  From the Teles e-mail search, we are

25   providing a privilege log.  We have 7,000 documents, it's my

1    understanding, that were labeled as potentially privileged

2    by a team of, like, six to twelve -- it fluctuates -- German

3    translators that we've had to hire to review it.  They are

4    still in the process of that, of that process.

5           From the Novak firm, we have reviewed their

6    documents, and we've found, I think it's 12 documents that

7    may not be privileged or attorney work product.  They deal

8    with things like a filing receipt, a receipt from the Patent

9    Office.  We have not created a privilege log for the rest of

10   that especially with this hearing, seeking the Court's

11   guidance, because we believe it would be unduly burdensome

12   and would not be proper for us to create a privilege log for

13   every communication in their file when the basis for the

14   discovery in the first instance, and Judge Robinson's

15   counsel in the Union Carbide case should be limited to

16   things in the file that deal only with the specific prior

17   art that they allege inequitable conduct on.

18          THE COURT:  All right.  Ms. Shiferman, respond

19   particularly to the suggestion that I really, if I'm going

20   to provide any relief here, I really should limit it to

21   documents that relate to inequitable conduct and only to the

22   references that you're relying on.

23          MS. SHIFERMAN:  Your Honor, we have cited

24   in our letter both the Microsoft case and the Ed Tobergte

25   case, the Microsoft case being a District of Delaware case,

1    which addressed expressly the fact that documents related to

2    the prosecution of asserted patents, including pending

3    counterparts, are relevant and discoverable under Rule 26.

4    There's nothing in this case that takes it out of the

5    general realm.

6            The discovery that we seek is not relevant to

7    only inequitable conduct.  That is one defense that is

8    pending before the Court.  We have other defense's related

9    on, for example, invalidity, noninfringement.  Both of those

10   relate to, or rely on claim construction, and Teles'

11   documents from its prosecution counsel regarding the

12   prosecution will -- may well have relevant information.  We

13   simply don't know because we don't have access to those

14   documents.

15           Most recently, the Federal Circuit has addressed

16   this issue in 2004, and the case 357 F 3d., 1340 also

17   supports discovery with respect to the prosecution files.

18   There's nothing in this case that differentiates it.  And

19   one of the categories of discovery that we are looking for

20   is on the inequitable conduct, which we have fairly pled in

21   this case.

22           Federal Rule 26 provides for a broad standard of

23   relevance for anything that might lead to admissible

24   evidence, and that standard applies here as it does to all

25   the other discovery issues that are pending in this case.

1    And there's nothing that I'm aware of that takes it -- that

2    should change that standard with respect to this issue.

3         With respect to the jurisdiction issue not being

4    ripe, my reference to the interrogatories and document

5    requests issued to Teles was simply in response to the point

6    made in the letter submitted by Teles, that our basis on

7    moving on this issue is based on Judge Robinson's own

8    order that I cited to you earlier, which indicates that

9    discovery -- where there is an attorney/client privilege

10   issue, it is Teles in this case that is asserting that

11   privilege, and therefore that is an issue that can be

12   decided by this Court, where the case is pending.

13        With respect to the notes, again, our request

14   is not limited to only those notes, and it does appear that

15   there are now notes that go beyond just the notes that were

16   taken at that meeting, as Mr. Long has confirmed.

17        And I would point you to the notes themselves

18   that are attached as an exhibit to the Gendner declaration

19   that we have submitted to this Court.  And, in particular,

20   the paragraphs there do go to more than to facts and rather

21   Mr. Gendner's impressions of what occurred, and therefore

22   those types of comments would generally be withheld.  And I

23   note that these notes were not produced during discovery.

24   They were only produced in response to a disclosure when

25   we -- when this issue -- when they told us about the

1   disclosure, and we said that we need proof of that

2   disclosure because there's nothing in the record.

3           So these notes were not produced as

4   nonprivileged, relevant notes at all during discovery until

5   this issue came up and the briefing delayed as to the

6   motions to amend.

7           With respect to the log that Teles has

8   submitted, that certainly does not cure the prejudice that

9   we have for not having the other log cure.  We have 600 of

10  7,000 entries related to the e-mails that the Court ordered

11  production of.  We did finally get the e-mails.

12          With depositions already in progress, we are

13  certainly prejudiced by not having the log, you know.  And

14  that is a separate issue, but I simply must address that

15  given the fact that that was raised during Mr. Long's

16  comments.

17          You know, we are proceeding with depositions

18  while we do not have relevant discovery both from the

19  prosecution files and also in the form of a privilege log

20  that explains to us the communications that Teles had with

21  its attorneys, and that includes the depositions that are

22  coming up in the next couple days, including Mr. Gendner's

23  deposition this Sunday.

24          THE COURT:  Okay.  I've heard enough on these

25  two issues and I am prepared to rule, and I view the issue

1    before me as one of Cisco seeking discovery from Teles, and

2    I do think that that issue is in front of me.

3           While I understand there are overlapping

4    third-party subpoenas that are out there and were issued

5    under the authority of another Court, I accept the

6    representation that this discovery was sought directly from

7    Teles, and I also am mindful of the case law cited by Cisco,

8    that in the end, it's really Teles that controls the

9    attorney client privilege vis-a-vis its counsel.  And so,

10   potentially, I do have authority to act on Teles and direct

11   them to make certain things available in discovery that are

12   in the physical control of outside counsel, but are under

13   the effective control and possession of Teles itself as the

14   client.

15          So that I understand is my authority.  And with

16   respect to the substantive dispute, I'm going to provide

17   Cisco just very limited relief.  And specifically, I am

18   ordering that Teles provide any nonprivileged, which

19   includes work product, but nonprivileged, non-work product

20   protected documents, and to log any relevant and responsive

21   documents that Teles is asserting a privilege with respect

22   to, only with respect to, first, the interview with the

23   Examiner, and by that I mean to include not just documents

24   that were created during the interview, but documents

25   created before and after the interview, that relate to the

1    interview.  And also documents that relate to specific prior

2    art references that are asserted by Cisco as a basis for its

3    inequitable conduct claims.  I believe that weighing the

4    relevance as well as the burden to Teles, as well as the

5    fact that whenever you're looking for communications between

6    a clients and counsel, the likelihood is that the

7    overwhelming majority of them will turn out to be

8    privileged.  And given the importance of that privilege,

9    factoring all of that in, I believe that this narrowly

10   tailored relief will provide sufficient evidence to Cisco as

11   the requesting party, and to go beyond that would be unduly

12   burdensome and not justified, particularly not justified by

13   the minimal, if any, relevance that I see here for this

14   discovery with respect to claim construction, or really any

15   issue other than inequitable conduct.

16            That's my ruling on those first two issues.

17            We do need to move more quickly through the

18   remaining issues.

19            The next one has to do with the presence

20   of German translators at the depositions of Teles witnesses.

21            And let me just ask Cisco, the prejudice that

22   you cite, would it be relieved by me providing additional

23   time to conduct any deposition that involves a translator?

24            MS. SHIFERMAN:  To some extent, that would

25   be the relief, but, your Honor, the real concern here, that

1    Teles had taken a position that these are native speakers

2    that are not comfortable going forward with a deposition in

3    English, even with a backup translator.

4              And I would point out one thing on the case

5    that -- cited by Teles on this issue, the Nockvy (phonetic)

6    case, the LexisNexis cite is 1991 U.S. District, Lexis 502.

7              Teles has misrepresented what that case states.

8    There, a person that was able to speak English and was

9    comfortably conducting business in English proceeded with

10   the deposition in English, with a backup translator, which

11   is exactly what we were proposing here.

12             Our key issue is that beyond just the time

13   limitations that are lost and the time constraints that we

14   would suffer at the deposition, there is just -- any

15   deposition that the logistics and just kind of going forward

16   with that deposition using a translator are very difficult.

17   And where that witness would ultimately testify at trial in

18   English, there's just an inequity and prejudice to Cisco

19   having to conduct a deposition and using translators when

20   that witness is then going to go forward and testify in

21   front of a jury in English.

22             And Teles argues that that issue is premature at

23   this point, but we believe that the time to make that

24   decision is now, so that we don't get an argument, you know,

25   down the line that says, well, had we known that this was

1   going to be the situation, we would have made a different

2   decision with respect to the deposition.

3           So the time to make that decision is now.  And

4   Mr. Blumenfeld, Cisco's local counsel, is on the line.  And

5   he may speak to another case where Judge Robinson has

6   addressed this very issue.

7           THE COURT:  Let me interrupt you, and it may be

8   Mr. Blumenfeld wants to speak to this, but I am mindful of

9   Teles' point, that the case is only referred to me for

10  purposes of discovery.  So even if I agree with you, do you

11  read me as having the authority to dictate how witnesses

12  will testify at a trial in front of Judge Robinson?

13          MS. SHIFERMAN:  Your Honor, we do see that you

14  would have the authority on that point.  It's not how the

15  trial would be conducted, but, rather, authority over Teles

16  and their -- your discretion to require a decision on how

17  the testimony would be presented.

18          We don't believe that this would really impact

19  the substance of what the issues are to be tried and,

20  rather, this is an issue that can be decided by your Honor.

21          In particular, the two key depositions of

22  witnesses that we believe speak very good English, they

23  conduct their business in English.  For Dr. Schindler,

24  we've actually heard press conferences that are all over the

25  Web where he's speaking English.  We've spoken to him

1   ourselves.

2           This is a key witness.  We are certain that he

3   will be a witness at trial.  And if Teles can represent that

4   he won't, that that is great, but we believe with certainty

5   that he will be a witness at trial, and to allow him to

6   testify in English at trial while forcing us to conduct his

7   deposition through the use of German translators does

8   present a prejudice to Cisco that is not fully resolved just

9   by additional time given that the -- the tight schedule that

10  we are operating on in London already.

11          THE COURT:  All right.  Let me turn to

12  Teles.

13          And it does seem to me that there's something

14  unfair about, in a sense, your providing a different witness

15  in a deposition than the witness you intend to present at

16  trial if you're changing the language that the witness will

17  be testifying in so speak just briefly to that and clear

18  that up, if I'm wrong about that.

19          MR. BLUMENFELD:  Your Honor, it is Jack

20  Blumenfeld.

21          And Ms. Shiferman said that I had an example,

22  and before Mr. Long goes, if I could just fill you in on

23  that?

24          THE COURT:  Very quickly, please.

25          MR. BLUMENFELD:  We had this issue, I

1    think it was back in 1996 or 1997, with Judge Robinson, with

2    a French witness, exactly the same thing, and her ruling was

3    that if they were going to testify in French at their

4    deposition, they were not going to testify in English at

5    trial, for exactly the reason that your Honor was asking

6    about.

7              I wish I could find the transcript, but it's old

8    enough that I can't.  But I know that that happened and did

9    want to bring that to your Honor's attention.

10             With that, I will --

11             THE COURT:  Thank you.  Yes.  Let's turn it over

12   to Teles at this point.

13             MR. LONG:  Thank you, your Honor.  This is David

14   Long, for Teles.

15             Mr. Blumenfeld wishes he had the transcript.  I

16   wish they just cite the case to us, provided earlier.

17             I can tell you, I talked with our local counsel.

18   They didn't believe it would be an issue.  That's the bridge

19   to cross when you get to it.

20             The nature of depositions are very different.

21   It's very premature.  There's a lot of uncertainty.  They're

22   very long and they're not focused.  There are often

23   discovery questions, questions that aren't focused because

24   it is discovery, and so it's just a different context.

25             And I believe it would be improper to tie the

1    Court's hands now, or attempt to, from what the parties may

2    or may not do at trial.

3              I think Cisco can raise this argument if it

4    wants to at trial and let Judge Robinson deal with it

5    accordingly.  I can say the only prejudice they argue in

6    their brief and that they ever talked to us about was the

7    prejudice about the time.  So let's talk about that.

8              The very first deposition they raised, they

9    told us the wrong place for the deposition, so we were late.

10             THE COURT:  All right.  Mr. Long, I don't need

11   to hear that.

12             I'm prepared to rule on this one at this point,

13   which is, while I'm very sympathetic with the position that

14   Cisco is articulating, and I think I know what I would do if

15   the trial was in front of me, I don't think that I have the

16   authority at this point to determine what language witnesses

17   will testify in at trial.  What I will say for discovery

18   purposes is that any deposition which requires a translator

19   can be up to 14 hours as opposed to up to seven hours

20   translator and if additional time is necessary and the

21   parties can't work that out, then they can come to me.  I do

22   think that's fully within the scope of my authority to

23   handle discovery disputes.

24             If Cisco or either side wants to in the future

25   articulate a basis for bringing this dispute in front of me

1    again and explaining why it's within my authority to

2    determine how witnesses will testify at trial, or any other

3    feature of trial, I will certainly hear that.  But that's my

4    ruling for today.

5              Let's try to move through the rest of the

6    disputes here.

7              I think the next one is Cisco's complaint

8    regarding Teles' compliance with Judge Robinson's order

9    regarding the infringement contentions.  We've kind of

10   addressed this issue, at least some of the background of it,

11   so just very briefly.

12             Whoever is going to speak for Cisco, tell me why

13   my ruling should be different here than it was with respect

14   to Teles' complaint.

15             MS. SHIFERMAN:  Your Honor, as we cited in our

16   letter, Judge Robinson expressly addressed the infringement

17   contention issue during the September 29th hearing, and at

18   that time, and I will refer you to the transcript at,

19   beginning at pages Page 20, she expressly indicated that

20   Teles was to explain its infringement theory based on the

21   evidentiary record to date.

22             In response to that order, Teles has provided us

23   with a supplementation.  The only thing that was

24   supplemented was the addition of nine documents citations.

25   We have produced over nine million pages in this case.  We

1     have depositions of Cisco witnesses coming up, and it

2     continues to be unclear to us what and why Teles contends

3     that we infringe these patents.

4              For example, critical issues related to their

5     allegations for -- for the call forwarding or call transfer

6     features and the SAA phone features, there's no citation for

7     support for any of the documents produced in this case in

8     response to those features.  Simply, we've provided you an

9     example to two limitations on our letter at Page 3.  They

10    are just mimicking the claim language that -- the claim

11    language itself rather than actually explaining how the

12    products infringe.

13             And by just adding just bare citations to nine

14    documents, we do not believe that that has complied with

15    Judge Robinson's instruction that they supplement their

16    infringement contentions to explain their infringement and

17    based on the evidentiary record to date.  And that is quoted

18    at Page 20 of her transcript, at lines 9 through 13.

19             Waiting until the end of discovery, as Teles

20    suggests, is insufficient.  Yes, we don't doubt that there's

21    ongoing supplementation that might supplement again after

22    the Cisco deposition, but what they've done to date based on

23    the evidentiary record is not sufficient.  They should

24    supplement now, so that we have a full understanding of what

25    the infringement theories are as we go into the depositions,

1    and then continue with their ongoing obligations to

2    supplement throughout discovery, as we had the expert

3    report.

4              THE COURT:  All right.  Let me hear from Teles.

5    And first let us know, are there more than nine documents

6    that you've received to date that support your contentions,

7    or are you only relying on those nine?

8              MS. LATEEF:  Your Honor, this is Monica Lateef,

9    from Howrey.

10             At the moment, we are relying on our nine best

11   documents and we will probably intend to supplement.  We

12   just got the most recent version of their source code at the

13   beginning of October and we're going through it with our

14   experts.

15             Cisco says that, and in their papers that they

16   provided you, that we didn't give any explanation, for

17   example, of the SAA probe, and then they cut an insert for

18   you of what we responded.

19             And the first document we cite, if you look at

20   that page, is Cisco 00434265.  And if your Honor were to

21   look at that document, on the first page, it talks about

22   P.S. fallback being a mechanism to re-route a call

23   automatically to PSTN through PBX.  And then you turn in

24   that very document to Page 265, and that page will say --

25   I'm sorry.  You turn to Page 271, and that page says that

1    Operata depends on RTR projects.  Then, if you go to Cisco's

2    website, there is a note that says, SAA was called, the

3    response time reporter RTR.

4              So Teles has done what it intends to do, which

5    is cite Cisco's documents, part of the evidentiary record,

6    to explain how it believes the accused products work.

7    Unlike Cisco, we are only providing our most relevant

8    references.  We don't see a need to bury them in paper.  We

9    are prioritizing, and these are the nine best documents that

10   we have right now, and as we discover more information, we

11   will clearly supplement at the end, possibly, of Cisco

12   depositions, just like we expect that they will supplement

13   at the end of Teles depositions.

14             THE COURT:  All right.  That's fine.

15             With respect to this request, I'm going to deny

16   Cisco's request for further responses to the infringement --

17   further infringement contentions at this point.

18             It's always difficult for the Court to evaluate

19   the sufficiency of contention, responses to contention

20   interrogatories, and to measure precisely at each point in

21   the litigation whether a party should do more or in some

22   instances should do less.  We've heard a lot on today's call

23   about two different types of approaches to interrogatories

24   and interrogatory responses, and everybody is aware of their

25   obligation to supplement.

1          I understand that Teles has supplemented in

2    response to Judge Robinson's September 29th order.  They

3    have incorporated the nine documents, and while maybe that's

4    not the best or ideal approach, it is at this point, given

5    everything else going on in the case, sufficient.

6          So let's move on to, finally, Cisco's complaints

7    regarding certain topics on the 30(b)(6) depositions, and

8    let's go through them very quickly.

9          And let me ask Cisco, first, on Topic No. 30

10   regarding information about marketing or publicizing the

11   patents-in-suit, Teles says that there have not been any

12   efforts, and that you can confirm that through Professor

13   Schindler's deposition.

14          Is that adequate?  And if not, briefly, tell me

15   why not.

16          MS. SHIFERMAN:  I guess if they are designating

17   Mr. Schindler, or Dr. Schindler on this category, then that

18   is adequate.

19          THE COURT:  All right.  Let's just find out.

20          That was my question for Teles.  Will you

21   designate Professor Schindler as your 30(b)(6) witness on

22   this topic?

23          MR. LONG:  Your Honor, I think we can -- we can

24   safely do that.  It's a confusing topic, but he's the CEO

25   and whatever he says would be binding anyhow.

1          THE COURT:  Okay.

2          MR. LONG:  So I think that's --

3          THE COURT:  That takes care of Topic 30.

4          Now, Topic 40, about valuation of the

5     patents-in-suit.

6          It does seem to me, Ms. Shiferman, if it's going

7     to be you, that when a bifurcated case for damages discovery

8     is, for the most part, going to be after liability is

9     determined, that what you are asking for here is more than

10    necessary, but take a shot at telling me why I'm wrong.

11         MS. SHIFERMAN:  Your Honor, any valuation

12    of the patent necessarily includes a substance of analysis

13    regarding the patent.  It might entail information regarding

14    consideration of the merits of the patent, the scope, the

15    coverage, Teles' ability to enforce the patent.

16         We're not looking at this to establish the

17    actual numerical value associated with the patent.  That, I

18    agree, would be related to damages.  We are looking at this

19    on the substantive merits of what would go in to creating

20    that valuation when and that is a -- that may lead to

21    information, and I think likely will lead to information

22    that goes well beyond damages.

23         THE COURT:  And have you gotten any documents on

24    this topic?

25         MS. SHIFERMAN:  We have no valuation documents

1    that we've located to date, but we have received over

2    800,000 pages of e-mails as recently as Saturday and we are

3    still reviewing them.

4                THE COURT:  All right.  Does Teles want to speak

5    to Topic 40?

6                MR. LONG:  Yes, your Honor.  We -- our

7    understanding is they want valuation of the patents.  The

8    way it has been conducted in the meet and confer and the

9    correspondence with your Honor is purely the value of the

10   patents.

11               In all candor, I don't understand what else

12   Ms. Shiferman is saying this would relate to, but it's

13   plainly saying the valuation of the patents, which seeks

14   damages.  I don't know what else I would look for, if their

15   topic was more specific or otherwise.  But I just -- it

16   really seems pure damages to me.

17               THE COURT:  Okay.  I'm going to deny this

18   request.  While I understand the theory to be if there's --

19   I suppose, if Teles went out and hired an outside person to

20   say our patent is worth X number of millions of dollars, and

21   in the course of that analysis, the expert opined as to, you

22   know, how strong the patent is and how likely it is to

23   survive challenges to its validity, that, strictly speaking,

24   those types of analyses may go to a non-damages issue.

25   Since the request is encompassed within a request for

1    testimony about valuation, overwhelmingly, it has to do with

2    valuation and damages issues, and in a bifurcated case, I

3    think that is just asking for too much.

4           So I'm going to deny the request to require

5    Teles to put up a witness on Topic 40.

6           And then, finally, Topic 60, I think I need help

7    from Cisco.

8           Give me an idea or tell me what exactly you're

9    looking for.  Is it as broad as seeking salary information

10   for every employee of the holder of the patents?

11          MS. SHIFERMAN:  Absolutely not, your Honor.  We

12   are seeking information regarding the financial interest of

13   any person or entity that has something to do with the

14   outcome of this case.

15          For example, Teles has now assigned the patents

16   of the -- the patents-in-suit to SSGB, which is owned by Mr.

17   Schindler.  Teles remains a party in this case.  We would

18   inquire regarding any financial interest that Teles might

19   have in the outcome of this litigation.

20          For example, the inventors.  They might have an

21   interest in the outcome of this litigation.  We should

22   certainly inquire about that.  Rather, you know, Teles says

23   we can ask individual witnesses, but we are not deposing --

24   you know, we're deposing a limited number of witnesses and

25   the best information for this is from the company itself as

1    a 30(b)(6), to indicate to us who or what entity is going to

2    have a financial interest once this case is resolved, should

3    there be any monetary outcome.

4                 THE COURT:  Okay.  And let me hear from Teles on

5    this.

6                 MR. LONG:  Thank you, your Honor.

7                 A key concern we have, in all candor, when I

8    conferred with Cisco, I asked were they seeking salary

9    information, and they said yes and anything else.  That's at

10   least where we are now.

11                The problem we have, you know the e-mail

12   discovery issue that you ruled on, Germany, like most

13   European countries, has a lot of things with privacy

14   protection, and we don't feel like Teles should be in a

15   position to disclose personal financial information of

16   individuals.

17                When it comes to the inventor, Cisco has

18   deposed, for example, Mr. Pesh (phonetic) and didn't ask any

19   of these questions of him.  I would certainly not expect

20   them to ask, what do you make.  I've never asked that in a

21   deposition, never heard it.

22                If they want to ask if he had any particular

23   interest beyond his normal salary or such, I think that's a

24   question they could ask them, but I don't want to put Teles

25   as a European country in a position where they are revealing

1    financial information of other people.  When it comes to

2    also Teles' interest in the patents and now the new patent's

3    owner, SSGB, it's kind of self-evident.  If they want to ask

4    Professor Schindler, who owns a control in all the shares of

5    SSGB, what his interest is in the patents, I think they can

6    say that.  Beyond that, the people who may be witnesses at

7    trial, I'm just afraid it's unduly burdensome, private

8    disclosure.

9           Lastly, Cisco has asked a lot of discovery about

10   how Teles can afford to litigate against it, so we're very

11   cautious that the discovery Cisco is seeking is not really

12   for any real relevance, but just to see what kind of

13   leveraging point it has as far as finances.  I would like to

14   say that's not the case, but I think that the information

15   they seek is subject to abuse.

16          THE COURT:  If I were to limit their ability to

17   get this discovery to financial interests of witnesses,

18   either at trial or at depositions -- I'm asking this

19   question of you, Mr. Long -- is that a workable limitation?

20   That is, are you prepared, or have you already told them who

21   those witnesses are?

22          MR. LONG:  Yes, your Honor.  That's what we

23   suggest to do.  We don't think it should go into regular

24   employment information.  That seems personal.  But we're

25   prepared to do that.  I believe we have identified all

1     witnesses we're aware of.  There may be third-party

2     witnesses that we're not aware of, we don't know who they

3     are.

4             For example -- well, I guess, I can't think of

5     an example.  Right now, I'm not aware of any, but discovery

6     is still going.  I know Cisco has some third-party subpoenas

7     out to third parties.  We might get some.  But I think we've

8     identified everyone we know so far and are willing to do

9     that for anyone else that we identify.

10            THE COURT:  All right.  Ms. Shiferman, anything

11     further?

12            MS. SHIFERMAN:  Yes your Honor.  Just briefly,

13     at this point, we do not know who the witnesses at trial

14     will be.  The only way to get a complete list of who has a

15     financial interest -- and, again, we are not seeking general

16     salary information, we are seeking information regarding the

17     entity that either people will get some sort of financial

18     payment or interest once this case is resolved rather

19     than general salary information.  The only way to get a

20     complete list is from the plaintiff in this case, which is

21     Teles.  We don't have information on who the parties will be

22     at trial.  That's ever-changing and those disclosures are

23     not due yet.

24            THE COURT:  All right.  On this one, on Topic

25     60, I am going to provide some relief to Cisco and I am

1   ordering that the plaintiff put up a witness, a 30(b)(6)

2   witness who can identify the individuals that will have a

3   financial interest in the outcome of the litigation.  By

4   that, I do not mean to include salary information or

5   just general benefits that come with employment, but an

6   actual financial stake that would be triggered, depending

7   on the -- directly triggered depending on the outcome of the

8   case.

9          At this point, I'm only ordering that the

10  30(b)(6) witness be someone who can identify who those

11  individuals are.  It's not necessary to get into even the

12  details of what that financial interest is.  And if it turns

13  out that Teles needs a further order from the Court in order

14  to comply with any laws that its subject to in other

15  countries in order to comply with this, then certainly I

16  will hear that request, if and when it is made.

17          I believe that exhausts all of the issues that

18  are before me.

19          Is that correct, Mr. Long?

20          MR. LONG:  Your Honor, if I can, I hesitate

21  asking, but I seek guidance from the Court on one issue

22  related to your ruling, and that is trying to confirm the

23  time of deposition for individuals.  The reason I say that

24  is we've offered individuals for two days and they declined.

25  They've ended early with the other depositions they've had

1     so far.

2              We are in London right now, after forming a

3     very complex schedule of who can do what when, and so the

4     parties might have a dispute if Cisco comes back and now

5     decide they want two days, for example, for people they've

6     declined, or they want more time with people they've already

7     finished with more time left under the current agreement.

8              So I think your guidance in the best way to deal

9     with that to keep the costs low, knowing that we're coming

10    to the end of discovery.

11             THE COURT:  I don't understand what the question

12    is.  Is it because I've given them more time with the

13    translator?

14             MR. LONG:  Yes, your Honor.  At the very outset,

15    when we do the schedule, we made clear all along that these

16    witnesses would need translators.  We offered two days for

17    several witnesses.  They declined.  The witnesses we did

18    offer, one, they started late and ended early.  The other

19    one, they ended an hour early.  So they have not used that

20    time.

21             I don't think time is a real issue your Honor

22    but if Cisco is going to seek more time under your order, I

23    think we'd like guidance as to maybe we work out a schedule

24    with Cisco and come back to your Honor or something, because

25    we're in London right now, right in the middle of

1    depositions.

2              THE COURT:  All right.

3              MR. LONG:  We have agreed to do them in London

4    because Cisco could not depose some people in Germany given

5    German law, but to save the travel time.  So we're in London

6    right now.  After very complex negotiation of what we would

7    do when, even us offering more time, I hate to upset that

8    apple cart could not and I hate, after this call, for Cisco

9    to suddenly ask for a change in time or to ask for more time

10   of witnesses that they were already denied having more time

11   for.

12             MS. SHIFERMAN:  Your Honor, if I may address

13   that point?

14             THE COURT:  Please do, yes.

15             MS. SHIFERMAN:  The two witnesses, you know,

16   two depositions of the inventors have already taken place.

17   And the dates were offered based on Judge Robinson's ruling

18   in this case, that any inventor can be deposed for 14 hours

19   instead of seven.  For those inventors that had taken place,

20   we determined that we did not need the additional time and

21   that would not change.

22             Mr. Long has not addressed the key depositions

23   that we were talking about, and, in particular, the

24   deposition of Mr. Gendner, who Teles is seeking to limit to

25   only four translated hours based -- and, you know, he's a

1    critical witness on inequitable conduct, and on his

2    declaration and with the translation taking into account

3    breaks, we effectively have maybe, you know, well under two

4    hours to actually -- actual effective deposition time.

5           That would certainly be one deposition that we

6    have raised with Teles and one of the things that really

7    pushed forward on -- made this issue important.

8           THE COURT:  All right.

9           MR. LONG:  Your Honor --

10          THE COURT:  Yes.  Go ahead.

11          MR. LONG:  I'm sorry.  I need to clarify,

12   particularly with Mr. Gendner, because there's a lot of

13   underlying facts you don't know.

14          Mr. Gendner is former in-house counsel for

15   Teles.  He was present at that interview and it was his

16   notes we provided.  He is no longer at Teles.  He's a

17   nonparty in Germany, in which we've asked him how much time

18   he would agree to be deposed.

19          We have no control over him.  He has agreed to

20   come to London, but he has only agreed for a few hours.  If

21   Cisco wants to -- we cannot make him -- to be clear, we

22   cannot make him do more hours than he wants.  If Cisco wants

23   to depose him more, then they need to go to the Hague

24   Convention, and we've sought to avoid that cost and begged

25   Mr. Gendner to come here.

1        That's all he would agree to.  He agreed to do a

2   declaration in this case, because he could do that without

3   much time and without travel.  He has been very reluctant to

4   do more.  So we could not provide more time with him if we

5   wanted to.

6        THE COURT:  All right.

7        MR. LONG:  If you ordered us to provide more

8   time, we couldn't do it.

9        THE COURT:  Mr. Long, are you planning to call

10  Mr. Gendner at trial?

11       MR. LONG:  At this instance, no, your Honor.

12  This deposition on this narrow topic should be all there is

13  for Mr. Gendner.

14       THE COURT:  All right.

15       MR. SHIFERMAN:  They are voluntarily relying on

16  this declaration.

17       THE COURT:  Right.  Look, my view and my ruling

18  earlier, which I'm happy to clarify now, is that whatever

19  the agreement was with respect to Mr. Gendner prior to

20  today's call has now been transformed into an agreement that

21  he is subject to deposition for twice as long as what was

22  agreed.  So if the agreement was four hours, it's now eight

23  hours if he's going to testify with the use of a translator

24  if he's not going to testify with the use of a translator,

25  then it remains what it was, which I'm advised is four

1    hours.

2              That's my order.  I will leave it to the parties

3    to do whatever they can or might with it.

4              Any other specifics that we need to get into

5    urgently right now, given where you all are?

6              Mr. Long?

7              MR. LONG:  No, thank you, your Honor.  I think

8    we'll be trying to deal with what you've done now.

9              THE COURT:  All right.

10             MS. SHIFERMAN:  If I may clarify also one of

11   your rulings, with respect to the timing of the privilege

12   log or production of documents related to the '431 patents,

13   I mean, Mr. Gendner is scheduled to be deposed on Sunday.  I

14   just wanted to specify a time, if you could, your Honor,

15   when that information would be provided, as it would be

16   critical to that deposition.

17             THE COURT:  Mr. Long, I understood that there

18   were only very few documents, maybe just one other set of

19   notes, so my understanding was that you could complete that

20   log very quickly.  But is that incorrect, Mr. Long?

21             MR. LONG:  Your Honor, my understanding is, for

22   Mr. Gendner's notebook, we can complete that as to that

23   interview fairly quickly.  I think given the time here, it

24   may not be tomorrow, but it may be Saturday.

25             THE COURT:  Okay.

1              MR. LONG:  That we can provide that to him.  And

2     his deposition is scheduled for Sunday.

3              THE COURT:  All right.  My order, then, is

4     modified to require that that privilege log be produced by

5     5:00 p.m. Saturday, London time.

6              Anything further, Ms. Shiferman?

7              MS. SHIFERMAN:  No, your Honor.

8              THE COURT:  And Mr. Long?

9              MR. LONG:  No, your Honor.

10             THE COURT:  Okay.  Thank you, counsel.  Bye-bye.

11             MR. LONG:  Thank you.

12             (Telephone conference concluded at 4:20 p.m.)

13                         -  -  -

14

15

16

17

18

19

20

21

22

23

24

25